UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHNATHAN I. ALCEGAIRE,

    Petitioner,

v.                                                   Case No: 8:21-cv-2244-KKM-TGW

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

    Respondent.
_____

## ORDER

The Court denied Johnathan Alcegaire's motion for appointment of federal habeas counsel, finding the request "both premature as a statutory matter and not ripe as a constitutional one" because Alcegaire had not exhausted his state postconviction remedies. *Alcegaire v. Sec'y, Fla. Dep't of Corr.*, __ F. Supp. 3d __, 2022 WL 610584, at *1 (M.D. Fla. 2022) (Mizelle, J.). Alcegaire moves for reconsideration through the Capital Habeas Unit of the Office of the Federal Public Defender for the Middle District of Florida (CHU). (Doc. 18.) Separately, Alcegaire files a pro se motion for appointment of counsel under *Martinez v. Ryan*, 566 U.S. 1 (2012). (Doc. 17.) Both motions are denied.

I. LEGAL STANDARD

A court's reconsideration of a prior order is an "extraordinary remedy" that should be used "sparingly." *Taylor Woodrow Constr. Corp. v. Sarasota/Manatee Airport Auth.*, 814 F. Supp. 1072, 1072–73 (M.D. Fla. 1993) (Kovachevich, J.); *accord Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984). Such a motion may arise under Rule 59(e) or Rule 60(b). *See* FED. R. CIV. P. 59(e), 60(b). Under either Rule, a motion to reconsider cannot be used to "relitigate old matters, raise argument or present evidence that could have been raised [earlier]." *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005); *accord Imperato v. Hartford Ins. Co.*, 803 F. App'x 229, 231 (11th Cir. 2020) (per curiam). To prevail on a motion to reconsider, the movant must identify "manifest errors of law or fact" or extraordinary circumstances. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quotation omitted).

II. ANALYSIS

Alcegaire, an indigent state prisoner with a capital sentence, filed this case seeking appointment of counsel under 18 U.S.C. § 3599 for a future federal habeas petition. The Court's prior Order denied appointment because Alcegaire was pursuing state postconviction relief, and so his claims were neither exhausted nor ripe for federal court review—and might be years away from becoming either. The pending motions, one for reconsideration and one for appointment, fare no better.

### A. Motion for Reconsideration

Through CHU, Alcegaire moves for reconsideration, identifying three reasons the request should be granted. (Doc. 18; Doc. 18-1.) None justify use of the "extraordinary remedy" of reconsideration. *Taylor Woodrow Constr.*, 814 F. Supp. at 1072.

#### 1. The Order Did Not Misapply *Lindsey* or *McFarland*

CHU primarily takes issue with the Order's reliance on *In re Lindsey*, 875 F.2d 1502 (11th Cir. 1989) (per curiam), arguing that the case is distinguishable and that *McFarland v. Scott*, 512 U.S. 849 (1994), requires appointment of counsel.

*McFarland* decided that a state prisoner's right to appointment of counsel under § 3599 attaches before he files a formal § 2254 petition. *See id.* at 855. Or, as CHU puts it, the right attaches "at some instant *before*" he files the petition. (Doc. 18 at 14.) When precisely? CHU accepts that it "most certainly attaches once a capital petitioner exhausts all his state remedies." (*Id.*) And, as CHU recognizes, *McFarland* does not hold "that a would-be habeas petitioner is entitled to counsel to prepare a federal habeas petition at any time, no matter how remote his habeas action may be." (*Id.*) Presumably, the crucial instant occurs sometime in the middle. But *McFarland* does not tell us when.

*Lindsey* supplies the answer. *Lindsey* holds that a state prisoner generally must exhaust his state court remedies before his statutory right to capital counsel attaches. *See Lindsey*, 875 F.2d at 1506. Reading *McFarland* and *Lindsey* together—as an inferior court

3

must—yields this rule: § 3955's right to appointment of counsel attaches before filing of a formal § 2554 petition and after a prisoner exhausts his state postconviction remedies. Under that rule, Alcegaire is not entitled to counsel because he has not exhausted his state remedies.

CHU protests, arguing that *McFarland* displaces *Lindsey*. On the merits, CHU is wrong for the reason just explained: although *McFarland* did not decide when the right to counsel may be invoked or whether exhaustion rules apply, *Lindsey* provided the answer. Because both *McFarland* and *Lindsey* are controlling authority, they must be read together. *See United States v. Vega-Castillo*, 540 F.3d 1235, 1237 (11th Cir. 2008) (per curiam) ("Even if the reasoning of an intervening high court decision is at odds with a prior appellate court decision, that does not provide the appellate court with a basis for departing from its prior decision.").

Moreover, the Order already dealt with this argument and rejected it. *See Alcegaire*, 2022 WL 610584, at *3–4. CHU does not give a persuasive reason to reconsider. Notably, CHU could have, but did not, address the interplay between *McFarland* and *Lindsey* in its initial motion for appointment as federal counsel or in its response to the objection of its appointment. (Doc. 1; Doc. 8); *see Michael Linet, Inc.*, 408 F.3d at 763 (reasoning that a motion to reconsider cannot "relitigate old matters" or raise arguments "that could have been raised [earlier]"); *accord Imperato*, 803 F. App'x at 231.

4

CHU persists though, pointing out that *Lindsey* is not an exact match to the facts here. True. But it need not be. Despite factual differences, "a point necessarily decided" forms part of a court's holding and binds in future cases like this one. *Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1049 (11th Cir. 2019) (quotation omitted); *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 66–67 (1996) (defining a holding to include "those portions of the opinion necessary to [the] result"). In reaching its result, *Lindsey* necessarily (and expressly) decided that a petitioner is not entitled to federally funded, capital counsel prior to exhausting his state claims. *See Lindsey*, 875 F.2d at 1506.

To be sure, subsequent cases recognize exceptions to *Lindsey*'s rule that exhaustion of state remedies is always required. *See, e.g., Booker v. Sec'y, Fla. Dep't of Corr.*, 22 F.4th 954, 960–61 (11th Cir. 2022) (Lagoa, J., concurring) (acknowledging that § 3599 permits appointment of counsel to exhaust claims in state court).

One such case is *McFarland*. In *McFarland*, the Supreme Court stayed a state prisoner's execution and appointed counsel to exhaust his claims in state court. *See McFarland*, 512 U.S. at 857–58. CHU likens the one-year statute of limitations facing Alcegaire to the execution that overshadowed McFarland. (Doc. 18 at 15.) The likeness is not a strong one. But even accepting that a statute of limitations could operate similar to an execution warrant, it does not in this case.

Imminence and control distinguish McFarland's date-certain execution from Alcegaire's statute of limitations. Imminence: McFarland filed his motion for a stay and appointment of counsel five days before his scheduled execution. *See McFarland*, 512 U.S. at 852. Here, CHU has done nothing to show that Alcegaire's time to file expires soon. Control: McFarland had no control over the date of his execution. Here, Alcegaire and his state-appointed attorneys control the statute of limitations clock by the pace they set in his state postconviction proceedings. *See* 28 U.S.C. § 2244(d)(2) (excluding time in which state postconviction review is ongoing from the one-year clock).

The differences in imminence and control alone are sufficient to distinguish McFarland from Alcegaire and to show that the exception to the exhaustion requirement applied there does not apply here. But these differences are not alone. As explained in the prior Order, Alcegaire "is factually distinguishable" from McFarland. *Alcegaire*, 2022 WL 610584, at *4. Most importantly, Alcegaire differs because he has counsel seeking collateral relief in state court that might eliminate or reduce his sentence and that prevents a § 2254 petition, perhaps for years or forever if Alcegaire succeeds in those post-conviction proceedings. *See id.* CHU does not contest or address these differences.

Even if CHU was correct that the Order misapplied *Lindsey*, that alone would not require reconsideration. *Lindsey* forms but one support for the Order among many. In brief, the Order denied appointment of counsel because *Lindsey* remains controlling

precedent despite *McFarland*; because Alcegaire failed to demonstrate an entitlement to counsel; because post-*McFarland* cases denying appointment were persuasive; and because post-*McFarland* cases raise a procedural bar to appointment at this time. *Alcegaire*, 2022 WL 610584, at *2–5. Most importantly though, the Order denied the motion because the issue was constitutionally unripe for adjudication. *See id.* at *6. Because CHU addresses only *Lindsey*, it leaves these alternative reasons intact.

### 2. The Order Does Not Restrict Alcegaire's Communications

CHU next finds footnote eight of the Order problematic: "The Court also expects that CHU will inform Alcegaire's state-appointed counsel of any attempts to contact its client and that his counsel will participate in any conversations between Alcegaire and CHU." *Alcegaire*, 2022 WL 610584, at *6 n.8. CHU argues that the Court should reconsider this "directive[]" that restricts Alcegaire's ability to consult with attorneys other than his state-appointed counsel. (Doc. 18 at 1–2.) Had the Order so directed or restricted Alcegaire, reconsideration might be appropriate. But the Order did not purport to circumscribe CHU's communications with Alcegaire.

The above footnote stated an expectation that CHU would coordinate with Alcegaire's state-appointed counsel to avoid disputes between the nine attorneys appearing on Alcegaire's behalf, and between those attorneys and Alcegaire, who also represents himself pro se before this Court. It did not restrict Alcegaire's ability to communicate with

7

CHU or with other attorneys. An expectation is not a directive. To the extent it could be construed otherwise, the Court clarifies that its earlier statement placed no additional restriction beyond the governing Florida Bar Rules on the communications between CHU, state-appointed counsel, and Alcegaire.

### 3. The Order Does Not Give Alcegaire Legal Advice or Preclude Alcegaire from Refiling Until He Exhausts State Remedies

CHU raises two final arguments. First, CHU argues that the Order's description of the law "misleads" Alcegaire and constitutes legal advice. (Doc. 18 at 15–16.) Second, CHU argues that the Order prohibits Alcegaire from filing a new motion until he exhausts his state remedies. To reach the latter point, CHU rephrases the Order's concluding line from "CHU *may* refile the motion once Alcegaire exhausts his state postconviction remedies," *Alcegaire*, 2022 WL 610584, at *6 (emphasis added), to a directive "that Alcegaire *may not* refile the request until he has exhausted his state post conviction proceedings," (Doc. 18 at 12 (emphasis added)).

Both arguments rely on misreadings of the Order. And given Alcegaire's renewed motion for appointment of counsel, seemingly not a reading he shares. But perhaps the Order can be read as CHU contends. If so, the Court clarifies now: the Order does not instruct Alcegaire when he may file motions, whom he may consult, or otherwise bestow legal advice. The Order—and this one as well—do no more than deny the motions at issue and explain the Court's reasons for doing so.

8

### B. Motion for Appointment of *Martinez* Counsel

Following the Order denying Alcegaire's motion for appointment of federal habeas counsel, Alcegaire filed a second motion. In it, Alcegaire requests appointment of counsel to raise claims permitted by *Martinez*. (Doc. 17 at 1.) This renewed motion fails for the same reasons as did the old.

Ordinarily, if a state prisoner does not present a claim for collateral relief to the state courts during postconviction review, he cannot present it to a federal court either. Simply put, claims not raised in state court are procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). As Alcegaire explains though, *Martinez* creates a "narrow exception" to the rule of procedural default. *Martinez*, 566 U.S. at 9; (Doc. 17 at 1). Even if not raised in state court, *Martinez* allows a federal habeas petitioner to assert that his trial counsel was ineffective if his state postconviction counsel was ineffective by failing to raise the claim. *See Martinez*, 566 U.S. at 17.

While *Martinez* eases the rule that claims not raised in state court are defaulted, it does not help Alcegaire in his quest for appointment of counsel. *Martinez* creates no entitlement to appointment. Nor does it address when a prospective § 2254 petitioner is entitled to appointment under § 3599. It expands the scope of claims a federal court may consider in a § 2254 petition. That is all.

Because Alcegaire's invocation of *Martinez* does not alter the analysis from the prior Order and he points to no change in facts that require reconsideration of the Order's conclusions on exhaustion and ripeness, Alcegaire's motion is denied for the same reasons stated there.

### III. CONCLUSION

For the reasons stated, Alcegaire fails to justify reconsideration or appointment of counsel. Accordingly, the following is **ORDERED:**

1. Alcegaire's Motion for Reconsideration is **DENIED**. (Doc. 18.)

2. Alcegaire's Motion for Appointment of Counsel is **DENIED without prejudice**. (Doc. 17.)

**ORDERED** in Tampa, Florida, on July 8, 2022.

Kathryn Kimball Mizelle
United States District Judge

10